Judge Bryan

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL E. MARTIN,<br><br>Defendant. | NO. CR12-5412RJB<br><br>GOVERNMENT'S<br>SENTENCING MEMORANDUM |

## I.    Introduction

The United States of America, by and through Jenny A. Durkan, United States Attorney for the Western District of Washington, and Ye-Ting Woo, Assistant United States Attorney for said District, files this Sentencing Memorandum as to Defendant Michael E. Martin.  Sentencing is scheduled for Friday, October 4, 2013, at 2:00 p.m. before this Court.

Defendant Michael E. Martin was initially charged by Criminal Complaint on September 25, 2012, with Threats Against a Federal Official, in violation of Title 18, United States Code, Sections 115(a)(1)(B) and 115(b)(4), and arrested the same day.  On October 4, 2012, the Grand Jury in this District returned the one-count Indictment charging him with the same offense.  The federal official whom the Defendant made threats to assault and kill was a Staff Judge Advocate Prosecutor, Captain Christopher Elder, at Joint Base Lewis McChord.  In September 2012, Captain Elder had made a

*Government's Sentencing Memorandum,*
<u>United States v. Michael E. Martin</u>, CR12-5412RJB - 1

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  decision to decline pursuing any military charges against the Defendant's ex-girlfriend,

2  and the Defendant's response to this decision was expressed in an email to the Provost

3  Marshal Office on September 21, 2012: "i'm not fucking playing with you fucking idiots

4  anymore. if anybody dies out of this then the blood is on the JAG'S HANDS NOT MINE.

5  IF THEY DON'T PURSUE CHARGES AGAINST HER LIKE THEY UNLAWFULLY

6  DID ME THEN SOLDIERS ARE GOING TO FUCKING DIE!!!"

7       On March 20, 2013, the Defendant entered a plea of guilty to the crime of Threats

8  to Kill a Federal Official, and submitted a written Plea Statement.

9       The government recommends a sentence of 36 months of imprisonment, followed

10  by a period of supervised release of three years.  The Probation Office is recommending a

11  sentence of 30 months of imprisonment, and the Defendant is seeking a sentence of time

12  served.

13                    II.     Facts in Plea Statement

14       In the Defendant's Plea Statement, he agreed to the following facts to support his

15  plea of guilty.

16       a.       Defendant Michael Martin was a member of the United States Army for

17  approximately 12 years until he was discharged on June 15, 2012 with a character of

18  service of "Under Other Than Honorable Discharge."  Martin was then permanently

19  barred from the Joint Base Lewis-McChord (JBLM).  On June 28, 2012, Martin was

20  apprehended on JBLM for suspicion of trespassing.  Martin has a Facebook page and

21  shortly following his apprehension, on approximately June 28 or 29, 2012, the following

22  posts were on his Facebook page: "I just wanna give a big FFFUCK YOUUUU!!! To

23  Fort Lewis! Thanks 4 arresting me 4 going 2 college tonite, that was awesome!! 1st yall

24  put me in jail 4 takin care of mommy when daddy died, now u arrest me 4 goin 2

25  skool?!?! Whats next, r yall gonna take me to court 4 eating breakfast?  Maybe take me in

26  4 goin 2 tha bathroom?!? FUCK YOU!!! Keep this up & im gonna put my bomb-makin

27  skillz 2 work!!! Think im fuckin playin."

28

*Government's Sentencing Memorandum,*
United States v. Michael E. Martin, CR12-5412RJB - 2

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

b.      On July 5, 2012, Michael E. Martin was contacted at his residence by members of the FBI Joint Terrorism Task Force, and local police officers, regarding the June 28, 2012, Facebook posting.  Martin declined to allow the FBI and local police to enter his apartment.  Martin advised he had no weapons, bombs or explosive devices and is completely avoiding any contact with JBLM.  Martin acknowledged that he made the statements on his Facebook page, and claimed that his reference to "bomb-makin skillz" was in reaction to being pulled out of class the previous week and subsequently arrested for trespassing on JBLM.  Martin advised he had no intention of bombing the JBLM or causing physical harm to others.

c.      In September 2012, Michael E. Martin submitted a report to the JAG Office claiming that his ex-girlfriend, A.E.P., had engaged in acts of harassment, assault, and perjury.  A.E.P. is employed by the United States Army with the rank of E-4 Specialist (SPC).

d.      In February 2012, a summary court martial was held as to several violations by Martin.  He was charged with several violations under Army Regulation AR635200, Chapter 14-12(c).  These violations included misconduct by the defendant in failing to obey Captain M. Ford and First Sergeant T. Liles.  In May 2012, an administrative hearing was held to determine Martin's suitability to continue active service.  At this hearing, it was decided for Martin to be discharged for Other Than Honorable Conditions.  On June 15, 2012, Martin was formally discharged from the U.S. Army.

e.      On Friday, September 21, 2012, at 09:54 AM, this email was sent from the defendant to M. Steward, Chief of Military Police Investigations, Provost Marshal Office: "Mike,  Hey there Mike, so as you know I came in a couple weeks ago and submitted my statement to one of your officers. He told me he'd get back to me within a week and let me know if the JAG was actually going to do anything about this or not. It's been 2 weeks now, so I was just wanting to see what's going on with this whole issue right now. Please let me know what's up. Thanks Michael E. Martin United States Army."  Attached

*Government's Sentencing Memorandum*,
<u>United States v. Michael E. Martin</u>, CR12-5412RJB - 3

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  to the defendant's email to Chief Steward was a Word document entitled, "Cruelty,
2  Maltreatment & Toxicity."

3      f.      In the "Cruelty, Maltreatment & Toxicity" document sent by Martin to
4  Chief Steward , the defendant made numerous inflammatory statements about his ex-
5  girlfriend as well as Captain Ford, First Sergeant Liles, other military staff, and the
6  defendant's belief that they conspired to have him discharged from the Army.
7  Specifically, the defendant sought to have a military criminal investigation conducted
8  against his ex-girlfriend and other military staff members.

9      g.      On September 21, 2012, at 11:07 a.m., Provost Marshal Office, Chief
10  Steward sent an email to the defendant advising that Captain C. Elder of the Staff Judge
11  Advocate's Office had completed its investigation and would be closing the case.  Chief
12  Steward suggested that the defendant could pursue his allegations with Thurston County
13  authorities.

14      h.      On September 21, 2012, at 9:30 p.m., the defendant sent the following
15  email reply to Chief Steward, threatening to harm Captain Elder:

16          "I have just one question about that, how come the SJA saw fit to pursue
17  charges against me for "communicating a threat" to SPC [A.E.P.] by sending her an email
18  telling her I was taking her to court - even though we were both off post, but won't pursue
19  charges against her for FUCKING THREATENING TO KILL ME. u tell that
20  mutherfucker if he doesn't pursue charges against her for threatening to kill me then i'm
21  going to fucking murder her, murder him, and murder everyone else who fucking
22  destroyed my life, my career, and too away my ability to take care of my elderly disabled
23  mother with bullshit charges that were illegal and unlawful and unjust. if they can pursue
24  charges against me and convict me for "threating' to take her to court for committing
25  purjury against me when we were both offpost when i sent that email then they can
26  absolutely pursue charges against her for fucking threatening to kill me!!! i'm not fucking
27  playing with you fucking idiots anymore. if anybody dies out of this then the blood is on
28  the JAG'S HANDS NOT MINE. IF THEY DON'T PURSUE CHARGES AGAINST

*Government's Sentencing Memorandum,*
<u>United States v. Michael E. Martin</u>, CR12-5412RJB - 4

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  HER LIKE THEY UNLAWFULLY DID ME THEN SOLDIERS ARE GOING TO
2  FUCKING DIE!!!

3      Sent from my SICK iPhone 4S ;-)"

4      i.      Captain Elder is a Staff Advocate Judge Prosecutor and was responsible for

5  reviewing the allegations made by the defendant about the defendant's ex-girlfriend and

6  other military personnel.

7                          III.    Additional Relevant Facts

8      The government provides the additional relevant facts contained in the discovery

9  materials produced to the Defendant and his counsel, as well as in publicly filed court

10 records to provide broader context to the Defendant's criminal conduct.  These facts,

11 along with the attached Exhibits, will also support the sentencing adjustments applied by

12 the Probation Office.  These additional facts demonstrate that the Defendant's conduct

13 towards other persons against whom he harbored anger, resentment, and blame for his

14 military discharge were part of a pattern and scheme that he engaged in to target these

15 individuals and to organize and plan assaults upon them.  These other individuals

16 included his ex-girlfriend, A.E.P., Thurston County District Court Judge Michael

17 Buckley, and Captain Matthew Ford.

18      The Defendant met his ex-girlfriend, A.E.P., in January 2011.  This relationship

19 was short-lived, however, and resulted in A.E.P. reporting an assault and malicious

20 mischief, identifying the Defendant as the suspect.  This led to the obtaining of an Order

21 of Protection by A.E.P. against the Defendant, and the Defendant's subsequent arrest for

22 violating that Order.  He was later convicted of violating the Order.  The Defendant also

23 sought to obtain an Order of Protection against A.E.P., and to terminate the Order against

24 him, but this request was denied.  The State district court judge that presided over the

25 protection order hearing and denied the Defendant's request was Judge Michael Buckley.

26 Judge Buckley is the victim in the now-charged Assault in the First Degree and Malicious

27 Mischief in the First Degree case filed in Thurston County, in which the Michael E.

28 Martin is named as the Defendant.  *See* Exhibit A, Information and Probable Cause

*Government's Sentencing Memorandum*,
United States v. Michael E. Martin, CR12-5412RJB - 5

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  Statement, <u>State v. Michael Edward Martin</u>, Thurston County Superior Court, Case

2  Number 13-1-01122-4.[1]   The underlying proceedings in Thurston County District Court

3  and Olympia Municipal Court occurred over the span of April 2011 to September 10,

4  2012.  Judge Buckley's decision denying the Defendant's request to terminate the Order

5  of Protection was affirmed by the Thurston County Superior Court on May 11, 2012.

6  The Defendant was convicted of violating the Order on August 30, 2012, and due to non-

7  compliance with probation conditions, a warrant was issued for the Defendant's arrest on

8  September 7, 2012.  Judge Buckley was assaulted with acid thrown on him, at his home,

9  on September 10, 2012.  Judge Buckley suffered redness and skin irritation to his lips,

10  arm and leg from the acid.

11       Although these facts are the subject of the State prosecution, these facts along with

12  the Defendant's preoccupation with his former commander, Captain Ford, and his ex-

13  girlfriend, are important to highlight.  The government submits that these facts support

14  the two-level upward sentencing adjustment for evidencing intent to carry out the threat

15  against Captain Elder, upon whom the Defendant fixated shortly before his federal arrest.

16       The Defendant's antagonism towards Captain Ford and A.E.P. escalated in

17  February 2012 when a summary court martial was held as to several violations by the

18  Defendant.  He was charged with the following violations under Army Regulation

19  AR635200, Chapter 14-12(c):

20       Unauthorized absence from unit from 28 Aug 10 to 6 Sep 10.
         Unauthorized absence from unit from 1 Nov 11 to 2 Nov 11.
21       Willfully disobeying an lawful order on 7 November 2011
         Willfully disobeying an lawful order on 8 November 2011
22       False official statement on 22 September 2011
23

24

25

26

---

27  [1]  The *Martin* Information was filed on July 26, 2013.  The Defendant has not yet made a first appearance in
    Thurston County Superior Court.  It is anticipated that, upon completion of the sentencing of the Defendant in this
28  federal prosecution, a writ will be filed by the Thurston County Prosecutor's Office to transfer custody of the
    Defendant to Thurston County.

1    The Defendant was found to have committed these violations, and in May 2012,

2  the U.S. Army formally issued a discharge for Other Than Honorable Conditions.

3  Between April and September 2012, the Defendant engaged in concerted efforts to target

4  Captain Ford, A.E.P., and other JBLM staff whom he blamed for his discharge.  *See*

5  Exhibit B, Mikemartin80@gmail.com emails.  The emails evidence the Defendant's

6  intent to locate Captain Ford and A.E.P., conduct surveillance of Captain Ford at his

7  home, and to lay in place a plan to harm Captain Ford and A.E.P.

8    In April 2012, the Defendant hired a private investigator, Brian Spiegel, to obtain

9  personal information about A.E.P. and Captain Ford.  The Defendant acquired the social

10  security number for Captain Ford and sent emails to himself with the number.  *See*

11  Exhibit B, Bates Number 001854, "Cpt Ford [Redacted];" the redacted portion listed a

12  social security number for Captain Ford.  On August 29, 2012, the Defendant contracted

13  with Brian Siegel to obtain Captain Ford's residence address, and provided the Captain's

14  wife's name, approximate age, and location.  The Defendant claimed that he needed the

15  Captain's help with a "congressional investigation."  *See* Exhibit B, Bates Number

16  001668.  Similarly, he made notations about A.E.P., where she was residing, and her

17  activities, as well as about Judge Buckley.

18    Among other items seized from the Defendant upon his arrest by the FBI on

19  September 25, 2012, was his IPhone.  Within the IPhone was a "Calendar/Task List."

20  The following entries were made in the "Calendar/Task List:"

21    • "Try 2 find Cpt Ford"

22    • "Find out where 2 get battery acid"

23    • "Recon judge assholes home again (nobody home :-("

24    • "Get water bottles ready 4 battery acid"

25    • "Go 2 Napa 4 battery acid"

26  *See*, Exhibit C, Defendant's notations on "Calendar/Task List" in IPhone.

27

28

*Government's Sentencing Memorandum*,
United States v. Michael E. Martin, CR12-5412RJB - 7

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

A search of the Defendant's residence located a factory container of sulfuric acid partially full, along with several plastic bottles filled with liquid that subsequently confirmed to contain sulfuric acid.  Also within the Defendant's vehicle were plastic bottles containing sulfuric acid.

But for the FBI's swift action in response to the JBLM's report of the Defendant's threatening email concerning Captain Elder, the government believes that the Defendant was similarly premeditating acts to cause severe and potentially fatal harm to Captain Elder.  The Defendant exhibited thoughtful and strategic planning to locate the residences of Judge Buckley, Captain Ford, and A.E.P. over the course of several months, including the hiring of a private investigator.   The assault on Judge Buckley occurred on September 10, 2012.  The Defendant's threatening email aimed at Captain Elder occurred on September 21, 2012.  Four days later, when federal agents arrested the Defendant, numerous containers with sulfuric acid were found in his vehicle and in his home.

The effects of sulfuric acid on the human body is summarized in the "Public Health Statement for Sulfur Trioxide and Sulfuric Acid" published by the Agency for Toxic Substances & Disease Registry (attached as Exhibit D).  Sulfuric acid is described as a "clear, colorless, oily liquid that is very corrosive."  The Public Health Statement describes concentrated sulfuric acid to be able to "catch fire or explode when it comes into contact with many chemicals including acetone, alcohols, and some finely divided metals.  When heated it emits highly toxic fumes . . ."  Direct contact with sulfuric acid, also known as battery acid, will cause chemical burns to the skin; air contact will cause difficulty in breathing; and ingesting acid can burn the mouth and throat, erode a hole in the stomach, and could result in death.  *See*, Exhibit D.

## IV.   Pre-Sentence Report

The government agrees with the sentencing factors applied in Paragraphs 14 through 22 of the Pre-Sentence Report, but disagrees with the three-level downward adjustment for acceptance of responsibility.  It appears that the Probation Office applied this adjustment based solely on the Defendant's plea of guilty.  The Defendant, however,

1    has not separately submitted any statement demonstrating acceptance of responsibility.

2    For this reason, the government does not apply any adjustment under Section 3E1.1.

3    Thus, the total offense level is 20, and with a Criminal History Category I, the advisory

4    guideline range is 33 to 41 months of imprisonment.

5         As to the specific offense characteristic adjustments under Section 2A6.1 for

6    evidencing an intent to carry out the threat, and the offense involving two or more threats,

7    the Defendant's Plea Statement support those adjustments, as well as the additional facts

8    detailed above.

9         The Defendant entered a plea of guilty to one count of threats to federal official.

10   In his Plea Statement, the Defendant admitted that he made the statement, "im [sic] gonna

11   put my bomb-makin skillz 2 work," that he expressed inflammatory statements about

12   Captain Ford and others, and that "SOLDIERS ARE GOING TO DIE."  He was in the

13   process of acting upon his intent to cause harm to soldiers when the FBI arrested him.

14   The Defendant's actions – locating the intended victim's residence, obtaining their

15   personal information including social security numbers, conducting "recon"

16   (surveillance) of the residences, researching locations to purchase battery acid and

17   purchasing the acid as well as plastic bottles for the acid, and using his IPhone to

18   maintain his "to do" list as well as utilizing the phone's GPS device to locate his intended

19   victims' residences.  This was his roadmap that laid out the manner by which he intended

20   to harm each of those whom he blamed for his military discharge.  Captain Ford was

21   merely the latest, and fortunately the last, in this list of persons targeted by the Defendant.

22             V.    Government's Sentencing Recommendation

23        The government recommends a sentence of 36 months of imprisonment, followed

24   by three years of supervised release.  This recommendation represents the mid-range of

25   the advisory guideline range based on a Total Offense Level 20.  It is supported by the

26   consideration of factors under Title 18, United States Code, Section 3553(c).

27        The Defendant's military record is certainly to be commended – for his patriotism,

28   commitment, courage, and resilience.  It is with anguish that the Defendant described his

*Government's Sentencing Memorandum,*
<u>United States v. Michael E. Martin</u>, CR12-5412RJB - 9

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   feelings of betrayal by the U.S. Army and the military when he was formally discharged.

2   The government recognizes that the Defendant as a soldier is not reflected in his

3   underlying conduct that is full of rage, hatred, resentment, and violent attitudes aimed at

4   individuals who had, at one time, a good relationship with him.  The deterioration of the

5   Defendant's mental health may explain how and why he crossed the line and engaged in

6   threatening, harassing and intimidating behavior.  It does not, however, excuse his

7   conduct, particularly where such harmful and violent conduct is aimed at others who have

8   equally committed their professional and personal life to serve and support the U.S.

9   military and government.  The government struggles with reconciling the man who

10  served the United States valiantly in war, yet waged his own war against those closest to

11  him through verbal and physical violence.

12          The Defendant's criminal behavior is extremely serious.  If he had not been

13  arrested shortly after expressing that "SOLDIERS ARE GOING TO FUCKING DIE,"

14  the government believes that the Defendant was determined to cause grave harm to

15  Captain Elder, Captain Ford, A.E.P., and possibly others whom he named in his "Cruelty,

16  Maltreatment & Toxicity" document.  The government does not consider the Defendant's

17  mental state of mind, as troubled as he was, to be sufficiently mitigating to warrant a

18  sentence less than the mid-range of the advisory guideline range.  The Defendant's

19  actions leading up to the email threat were calculated and intentional.  By sending the

20  threatening email to the Provost Marshal Office, he was not responding in an aberrant

21  moment of misdirected anger.  As evidenced by his emails and the tasks saved on his

22  IPhone, the Defendant was an organized schemer, fueled by a determination to exact

23  revenge on those whom he believed was responsible for the way in which the U.S. Army

24  had treated him.

25          The government considers the Defendant to be at high risk for reoffending.  The

26  government agrees with the Probation Officer's assessment of the Defendant by

27  characterizing his criminal behavior as "respond[ing] to every obstacle throughout [the

28  military and municipal court] process by exploding with a seemingly uncontrollable and

*Government's Sentencing Memorandum,*
<u>United States v. Michael E. Martin</u>, CR12-5412RJB - 10

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   irrational venomous rage." The Defendant has not expressed any remorse nor articulated

2   any self-reflection that he engaged in unlawful, egregious conduct.

3        Finally, the Defendant does not have the ability to pay a fine, therefore this Court

4   should waive any fine. The Defendant must pay a mandatory assessment of $100.00

5        DATED this 2nd day of October, 2013.

6

7                                      Respectfully submitted,

8                                      JENNY A. DURKAN
                                       United States Attorney
9

10

11                                     /Ye-Ting Woo
                                       YE-TING WOO
12                                     Assistant United States Attorney
                                       1201 Pacific Avenue, Suite 700
13                                     Tacoma, Washington 98402
                                       Telephone:   206-553-2268
14                                     Fax:         206-553-4986
15                                     E-mail:   Ye-Ting.Woo@usdoj.gov

16

17

18

19

20

21

22

23

24

25

26

27

28

*Government's Sentencing Memorandum,*
<u>United States v. Michael E. Martin</u>, CR12-5412RJB - 11

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1
CERTIFICATE OF SERVICE

2
        I hereby certify on October 2, 2013, that I electronically filed the foregoing with

3
the Clerk of the Court using the CM/ECF system which will send notification of such

4
filing to the attorney of the record for the defendant.

5

6
                                        /Ye-Ting Woo_____

7
                                        YE-TING WOO

8
                                        Assistant United States Attorney

9
                                        1201 Pacific Avenue, Suite 700
                                        Tacoma, Washington 98402

10
                                        Telephone:    206-553-2268
                                        Fax:          206-553-4986

11
                                        E-mail:   Ye-Ting.Woo@usdoj.gov

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Government's Sentencing Memorandum,*
United States v. Michael E. Martin, CR12-5412RJB - 12